

HG/SVW: USAO#2023R00737

USDC- BALTIMORE
'23 NOV 16 PM3:57

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. MJM - 23-411 |
| | : |
| v. | : (Conspiracy To Commit Money Laundering, |
| | : 18 U.S.C. § 1956(h); Money Laundering To |
| ADANEGBE GIFT OSEMWENKHAE, | : Promote Unlawful Activity, 18 U.S.C. |
| FAIZOU GNORA, | : § 1956(a)(1)(A)(i); Money Laundering To |
| EMILY GIL ARIAS, | : Conceal Unlawful Activity, 18 U.S.C. |
| FATOUMATA BOIRO, | : § 1956(a)(1)(B)(i); Forfeiture, 18 U.S.C. |
| LAWRENCE OGUNSANWO, | : § 982(a)(1), 21 U.S.C. § 853(p)) |
| LAKEISHA PARKER, | : |
| MARTIN OGISI, | : UNDER SEAL |
| BLONDEL NDJOUANDJOUAKA, | : |
| KEVIN COLON, | : |
| LORENA PEREZ HERRERA, | : |
| | : |
| Defendants. | : |
| | : |

...oOo...

## INDICTMENT

### COUNT ONE – CONSPIRACY TO COMMIT MONEY LAUNDERING

The Grand Jury for the District of Maryland charges:

### INTRODUCTION

At times material to this Indictment:

1.      Defendants **ADANEGBE GIFT OSEMWENKHAE ("GIFT"), FAIZOU GNORA ("GNORA"), EMILY GIL ARIAS ("GIL ARIAS"), FATOUMATA BOIRO ("BOIRO"), LAWRENCE OGUNSANWO ("OGUNSANWO"), LAKEISHA PARKER, MARTIN OGISI ("OGISI"), BLONDEL NDJOUANDJOUAKA ("BLONDEL"), KEVIN**

1

COLON ("COLON"), and **LORENA PEREZ HERRERA ("HERRERA")** (collectively

**"DEFENDANTS")** lived in Maryland.

    2.      YAHYA SOWE ("SOWE"), VICTOR KILLEN ("KILLEN"), AREAL EL-

LOVIETA HARRIS ("HARRIS"), and GEDEON AGBEYOME ("AGBEYOME") lived in

Maryland.

    3.      The following companies, entities, government entities, and organizations were

located outside the State of Maryland (hereinafter "Fraud Victims"):

a) The Victim Trust was established to remedy environmental issues at a manufacturing facility.

b) Victim ABP was an urban redevelopment program that focused on enabling the construction of parks and trails, providing affordable housing, and promoting public health.

c) Victim County Medical Center provided medical services to patients through a full service hospital, and at least five service locations.

d) Victim Company AP was a transportation and logistics company specializing in wind turbine components.

e) Victim Limited Liability Company ("LLC") #1 was associated with an apartment complex.

f) The Butte-Silver Bow school district was located in Butte, Montana, and provided schooling for children from kindergarten to 12th grade;

g) Victim College was a private liberal arts school with more than 1,000 students.

h) Delaware River & Bay Authority ("DRBA") was a government agency created by agreement between Delaware and New Jersey.

i) Victim LLC #2 was a Colorado real estate agency.

j) Larimer County, Colorado was a northern county in Colorado with a population of approximately 350,000 people.

k) Victim LLC #3 was a large recreational vehicle dealership.

l)   The Victim Health Center employed more than 300 healthcare professionals and served the needs of nearly 30,000 patients at more than 17 health care facilities.

m)   TDG was a real estate development and property management firm specializing in building and maintaining unique and sustainable properties.

n)   Victim LLC #4 was a real estate property development company in Texas.

o)   Vigo County was a western county in Indiana, with a population of approximately 100,000 individuals.

4.      Capital One Bank ("CO"), Citibank, N.A. ("Citi"), PNC Bank ("PNC"), M&T Bank Corporation ("M&T"), J.P. Morgan Chase, N.A. ("JPM"), SunTrust Bank and Truist Bank (collectively "Truist"), Wells Fargo Bank ("WF"), and Woodforest Bank ("Woodforest") were financial institutions as defined in 18 U.S.C. § 20, and had physical branches, ATMs, teller windows, and employees within Maryland.  All of these entities are hereinafter collectively referred to as the "Financial Institutions."

5.      The Financial Institutions maintained records concerning financial transactions in their accounts, including but not limited to records about the individuals controlling the accounts, and in some instances, surveillance video and/or images, and information about the identification documents used to open accounts.

6.      Financial institutions throughout the United States used a nine-digit number called a routing number along with a bank account number to determine the particular financial institution and account that should receive funds from a wire transfer.  Similarly, financial institutions placed the routing number and account number on checks so that a bank receiving a check deposit could draw on the funds and account from which the check was issued.

3

## THE CONSPIRACY

7.      Beginning at least in or around January 2019, and continuing through on or about the date of this Indictment, in the District of Maryland, and elsewhere,

**ADANEGBE GIFT OSEMWENKHAE,
FAIZOU GNORA,
EMILY GIL ARIAS,
FATOUMATA BOIRO,
LAWRENCE OGUNSANWO,
LAKEISHA PARKER,
MARTIN OGISI,
BLONDEL NDJOUANDJOUAKA,
KEVIN COLON, and
LORENA PEREZ HERRERA,**

the **DEFENDANTS** herein, did knowingly combine, conspire, agree together and with each other, with SOWE, KILLEN, HARRIS, and AGBEYOME, and with other persons known and unknown to the grand jury, to commit an offense against the United States, namely,

a.      to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

b.      to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership,

4

and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## PURPOSE OF THE CONSPIRACY

8.      It was a purpose of the conspiracy for the **DEFENDANTS** and their co-conspirators to unlawfully enrich themselves and others by engaging in financial transactions to promote a wire fraud scheme and conceal wire fraud proceeds.

## MANNER AND MEANS

9.      It was part of the conspiracy that the **DEFENDANTS** created and used limited liability companies and other business entities (collectively "Shell Entities") that did not have physical operations, business premises, engage in legitimate business activities, earn gross revenues, incur cost of goods sold, incur administrative expenses associated with business operations, report wages for employees to the State of Maryland, or have significant numbers of employees.

10.      It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators opened and controlled bank accounts on which the Shell Entities were listed as the account holders, and members of the conspiracy had signature authority over the bank accounts.

11.      It was further part of the conspiracy that on certain accounts, a member of the conspiracy used an alias or a stolen identity as the individual with signature authority for the bank account registered to one of the Shell Entities.

12.      It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators registered, created, used, and controlled the following Shell Entities:

a. Gifted LLC, which **GIFT** controlled;

b. Blue Skye Realty, which **GIL ARIAS** controlled;

c. Faiz Automobiles LLC, which **GNORA** controlled;

d. First Realty Management LLC, which **GNORA** controlled;

e. FB Morgan LLC, which **BOIRO** controlled;

f. Smart Logistics LLC, which **OGISI** controlled;

g. Parker Transports LLC, which **PARKER** controlled;

h. Blaxstone Enterprises LLC, which **OGUNSANWO** controlled;

i. Satisfied Health Care LLC, which **BLONDEL** controlled;

j. KC All Pro HVAC Service LLC, which **COLON** controlled;

k. Colon Enterprise LLC, which **COLON** controlled;

l. Lorena Perez Herrera LLC, which **HERRERA** controlled;

m. YS Estate and Properties, which SOWE controlled;

n. Victor's Trucking and Pull LLC, which KILLEN controlled;

o. Vieta Collection, which HARRIS controlled;

p. The Justin Company LLC, which AGBEYOME controlled; and

q. [Last Name of Identity Theft Victim] Company LLC, which AGBEYOME controlled.

13.     It was further part of the conspiracy that the **DEFENDANTS** registered and used bank accounts listed in their own names and those of their co-conspirators.

14.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators used the bank accounts that they controlled to receive money originating with the Fraud Victims.

15.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators engaged in financial transactions with proceeds obtained from a wire fraud scheme in which the Fraud Victims were deceived into sending money based on false and fraudulent pretenses, such as being provided with false bank account information for legitimate vendor payments and false wire transfer information for legitimate transactions.

16.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators caused fraud proceeds to flow through the following bank accounts (ending with the four numbers shown): BOA 1316, BOA 4272, BOA 5930, CO 4313, CO 5654,  CO 6016, CO 6462, CO 8993, CO 9629, Citi 0305, Citi 1334, Citi 2325, Citi  2947, Citi 3819, Citi 7105, JPM 1531, JPM 5057, JPM 8673, PNC 2977, PNC 3776, PNC 4286, PNC 5999, PNC 6379, PNC 9062, PNC 9581, M&T 8530, M&T 9895, NFCU 0815, NFCU 3359, Truist 0966, Truist 0978, Truist 5211, Truist 6005, Truist 9281, Truist 9612, WF 3335, WF 7361, WF 7387, WF 7418, WF 7640, Woodforest 1739, Woodforest 4396, Woodforest 4636, Woodforest 7464, Woodforest 4966, and Woodforest 8918.

17.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators promoted the wire fraud scheme by causing additional financial transactions using the wire fraud proceeds deposited into the bank accounts listed in the names of the Shell Entities, **DEFENDANTS,** and their co-conspirators.

18.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators concealed and disguised the wire fraud proceeds by causing additional financial transactions with the wire fraud proceeds.

19.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators caused wire fraud proceeds to be routed through additional intermediate bank accounts in transactions with no legitimate business purpose.

20.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators caused wire fraud proceeds to be credited to additional bank accounts registered to the Shell Entities and controlled by the **DEFENDANTS**.

21.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators provided false and fraudulent information to financial institutions in an effort to convince the financial institutions to release holds on wire fraud proceeds in bank accounts controlled by the **DEFENDANTS** and their co-conspirators.

22.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators concealed and disguised the nature, location, source, ownership, and control of the proceeds by withdrawing, spending, and transferring money from the Shell Entities' bank accounts in the form of cash withdrawals, the purchase of cashier's checks, debit card transactions, and other financial transactions.

23.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators communicated through encrypted online communication applications, including WhatsApp and Telegram.

24.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators obtained and used a portion of the money deposited into the Shell Entities' bank accounts controlled by the **DEFENDANTS** and their co-conspirators.

25.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators engaged in financial transactions, using the wire fraud proceeds, to purchase vehicles, and caused some vehicles to be shipped outside the United States.

26.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators engaged in international financial transactions and caused wire fraud proceeds to be sent outside the United States.

27.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators collectively conducted and attempted to conduct financial transactions involving more than $9.5 million, knowing that the transactions constituted proceeds from unlawful activity.

18 U.S.C. § 1956(h)

## COUNTS TWO THROUGH TWENTY-TWO – MONEY LAUNDERING

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 - 6 and 9 - 27 of Count One of this Indictment are incorporated here by reference.

2.     On or about the dates listed below, in the District of Maryland and elsewhere, the **DEFENDANTS** listed below did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit the transactions described below, which involved the proceeds of a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343,

a.     with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

b.     knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i):

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|---|---|---|---|
| 2 | Nov. 17, 2020 | **PARKER OGUNSANWO** | Transfer of $70,450.50 from ST 9281, in the name of Parker Transports LLC, to CO 5654, an account in the name of Blaxstone Enterprises LLC |

| 3 | Jan. 5, 2021 | **PARKER** | Deposit of $210,200.63 from PNC 6379 to BOA 1316, an account in the name of Parker Transports LLC |
|---|---|---|---|
| 4 | Feb. 8, 2021 | **OGUNSANWO** | Transfer of $239,517 from PNC 6379 to BOA 4272, an account in the name of Blaxstone Enterprises LLC |
| 5 | Apr. 1, 2021 | **OGUNSANWO** | Transfer of $427,050 from ST 0978 to Citi 2325, an account in the name of Blaxstone Enterprises LLC |
| 6 | Jun. 22, 2021 | **BOIRO** | Transfer of $30,000 via a check purchased with funds from JPMC 1531, and deposited into NFCU 0815, an account in the name of **BOIRO** |
| 7 | Nov. 17, 2021 | **BLONDEL** | Transfer of $372,500.99 from CO 4313, an account in the name of Satisfied Health Care LLC, to Citi 7105, an account in the name of SOWE |
| 8 | Nov. 18, 2021 | **BLONDEL** | Transfer of $350,880 from CO 4313, an account in the name of Satisfied Health Care LLC, to CO 9629, an account in the name of **BLONDEL** |
| 9 | Nov. 18, 2021 | **BLONDEL COLON** | Transfer of $174,100 via a check purchased with funds from CO 9629, and deposited into ST 0966, an account in the name of KC All Pro HVAC Services LLC |
| 10 | Nov. 18, 2021 | **BLONDEL COLON** | Transfer of $177,880.99 via a check purchased with funds from CO 9629, and deposited into Woodforest 1739, an account in the name of KC All Pro HVAC Services LLC |
| 11 | Nov. 22, 2021 | **COLON** | Transfer of $51,000 via a check purchased with funds from ST 0966, an account in the name of KC All Pro HVAC Services LLC, and deposited into Citi 1334 |
| 12 | Dec. 4, 2021 | **COLON** | Purchase from jewelry store in Columbia, Maryland using funds from Woodforest 7464 |

| 13 | Apr. 13, 2022 | **GIL ARIAS GNORA** | Transfer of $150,000 via a check from ST 9612, and deposited into Citi 9230, an account in the name of First Realty Management LLC |
| 14 | Apr. 15, 2022 | **GIL ARIAS GNORA** | Transfer of $275,000 from ST 9612 to Citi 3819, an account in the name of Faiz Automobiles LLC |
| 15 | Apr. 18, 2022 | **GNORA** | Purchase of 2021 Mercedes AMG GLE 53 |
| 16 | Apr. 28, 2022 | **BOIRO HERRERA** | Transfer of $305,000 from CO 6462 to Citi 2947, an account in the name of FB Morgan LLC |
| 17 | Apr. 29, 2022 | **HERRERA** | Deposit of $85,020 from CO 6462 to Woodforest 4966, an account in the name of **HERRERA** |
| 18 | May 19, 2022 | **BOIRO** | Deposit of $465,390.11 from PNC 9062 to Citi 2947, an account in the name of FB Morgan LLC |
| 19 | Mar. 4, 2022 | **BOIRO** | Deposit of $645,550 from CO 6016 to PNC 5999, an account in the name of FB Morgan LLC |
| 20 | May 4, 2022 | **OGISI** | Transfer of $64,440 via a check purchased with funds from Citi 2947, and deposited into PNC 3776, an account in the name of Smart Logistics LLC |
| 21 | May 24, 2022 | **BOIRO OGISI** | Transfer of $178,500 via a check purchased with funds from Citi 2947, and deposited into WF 7640, an account in the name of Smart Logistics LLC |
| 22 | Oct. 21, 2022 | **OGISI** | Deposit of $649,867.59 check from PNC 2977 to BOA 5930, an account in the name of Smart Logistics LLC |

18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982(a)(1) and (b)(1) and 21 U.S.C. § 853(p), in the event of a defendant's conviction under Counts One through Twenty-Two of this Indictment.

### Money Laundering Forfeiture

2.      Upon conviction of any the offenses alleged in Counts One through Twenty-Two of this Indictment, the defendants,

**ADANEGBE GIFT OSEMWENKHAE,**
**FAIZOU GNORA,**
**EMILY GIL ARIAS,**
**FATOUMATA BOIRO,**
**LAWRENCE OGUNSANWO,**
**LAKEISHA PARKER,**
**MARTIN OGISI,**
**BLONDEL NDJOUANDJOUAKA,**
**KEVIN COLON, and**
**LORENA PEREZ HERRERA,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offenses, or any property traceable to such property.

### Property Subject to Forfeiture

3.      The property to be forfeited includes, but is not limited to:

   a.      A money judgment in the amount of funds involved in the money laundering;

   b.      Approximately $214,518.42 seized from Truist account x0966 in the name of KC ALL PRO HVAC SERVICES LLC;

   c.      Approximately $504,339.41 seized from Citibank account x3819 in the name of FAIZ AUTOMOBILES LLC;

    d.        Approximately $118,945.08 seized Citibank account x9230 in the name of FIRST REALTY MANAGEMENT LLC;

    e.        Approximately $46,849.20 seized from Citibank account x8311 in the name of W.P.F. LLC.

## Substitute Assets

4.       If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a.        cannot be located upon the exercise of due diligence;

    b.        has been transferred or sold to, or deposited with, a third person;

    c.        has been placed beyond the jurisdiction of the Court;

    d.        has been substantially diminished in value; or

    e.        has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C § 982(b)(1).

18 U.S.C. § 982(a)(1) and (b)(1)
21 U.S.C. § 853(p)

_____
EREK L. BARRON
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**    Date: 11/16/23
Foreperson